The bill in this case was filed by John J. Hooks, William R. Hooks, and Franklin H. Hooks, and set forth in substance; (84) That on the ____ day of March, 1837, Mary Hooks, of the County of Wayne, being a widow and the mother of the plaintiffs, was addressed by the defendant, and proposals of marriage were made and accepted; that the said Mary was seized and possessed of a valuable real and personal estate, consisting of lands, slaves and other personal property, and it was among other things, agreed, upon the treaty of marriage between the said Mary and Blackman, that all the estate of the said Mary, real and personal of the said Mary, should be so secured to the said Mary, by deed of marriage settlement, that, notwithstanding the said marriage, she should not be deprived of her right, title and property in and to the said estate, real and personal, but that she should have, hold and enjoy the same, free and exempt from any claim, right or interest, either in law or equity, which, by operation of law, the said *Page 68 
Blackman might acquire or derive by reason of the said intended marriage, and neither the said Blackman nor his creditors should acquire by said marriage any right, title or estate in said property, except that the said property might remain during the marriage, in the occupancy and use of said Blackman, he paying therefor an annual rent of one dollar, if demanded.
The bill further sets forth, that, before the solemnization of the said marriage, an instrument or deed of settlement, bearing date 14 March, 1837, was made and executed by the said Mary and Blackman, which was duly proved and registered, a copy of which hereunto annexed, marked A, was made a part of the bill. And the bill further sets forth, that the female slaves, named in the said deed, have had several children, since the execution of the said deed, which are now in the possession of the said defendant, and whose names, as far as known, are Phereby, etc.
And the bill further sets forth, that the said marriage was (85) solemnized immediately after the execution of the said indenture; and that the said Blackman, for many years thereafter, always admitted the separate estate and property of the said Mary in the said lands and slaves, and, in particular charges, as a clear indication of the view, which the defendant had of the operation and effect of the said settlement, that, in February, 1841, the negro Pompey was sold by the said Mary, and she permitted the said defendant to receive and use the money, but the said defendant made and delivered his note to the said Mary, payable to her, for three hundred and forty dollars, the price of the said negro, and the said note was in possession of the said Mary in the fall of the last year, since which time it is supposed it has come to the hands of the said defendant; and, also, that, on 8 February, 1848, and on 21 March, 1848, the said Blackman distinctly recognized the right of the said Mary to sell and dispose of the said settled property, he being a party to certain deeds to the plaintiffs, John and Franklin, whereby the said Mary conveyed to them certain lands, being a part of the said real estate contained in the said settlement, which deed the said plaintiffs have ready to produce, etc.
And the bill further sets forth, that the said Mary departed this life on the ____ day of June, 1849, leaving the plaintiffs and the defendant her surviving, and that the defendant hath, as the plaintiffs are informed, taken out letters of administration upon the estate of the said Mary, at August Term, 1849, of the County Court of Johnston, and claims to hold, for his own use and benefit, all the personal estate of the said Mary, although the same is included in the said deed of settlement, and denies that he is accountable for the same or any portion thereof to the plaintiffs, who are the children and next of kin of the said Mary, as aforesaid. *Page 69 
And the plaintiffs in their said bill say, that they are advised, that the said deed is informal and defective, as a marriage (86) settlement, because the said property was not conveyed to a trustee for the uses and purposes therein expressed; yet the said agreement, being made between the parties for a valuable consideration, and the intent and meaning thereof being apparent, this Court will not suffer the same to fail and become nugatory, for want of a trustee, and that, although the covenants and agreements in the said deed may be extinguished at law, by the marriage of the parties thereto, yet the said defendant will be decreed and held a trustee for the uses and purposes, declared in the said deed, according to the just construction of the same and the rules and principles of this Court; and that the plaintiffs are further advised that, by the true construction of the said deed, the said Mary was entitled to her estate in the said real and personal property, unaffected and unimpaired by the said marriage, and that, upon the death of the said Mary, the same, with the increase of the said negroes, devolved upon the plaintiffs, as the next of kin of the said Mary, and that they are entitled to call upon the said defendant to surrender the said negroes and their increase, and the proceeds of any that may have been sold, and also to such account of the rents, profits and hires of the said property, as the Court may deem just and proper.
The plaintiffs then, in the said bill, pray that the defendant may answer the interrogatories therein propounded touching the premises, and that he may be decreed to surrender the said negroes and their increase, and the produce of the sales and hires, if any, and pay to the plaintiffs what may be due and owing on the said account and settlement, and may have such other and further relief as the nature of the case may require, and pray process, etc.
Upon the return of the process, the defendant appeared and filed a general demurrer to the plaintiffs' bill. On argument it was ordered by the Court that the demurrer be overruled and that the defendant answer, etc. From this order the defendant, by leave of the (87) Court, appealed.
STATE OF NORTH CAROLINA — Johnston County.
This Indenture, made and entered into this 14 March, 1837, between Blackman W. Lee, of the County of Sampson and State aforesaid, of the first part, and Mary Hooks, of the first named State and County, of the second part, witnesseth: That whereas, the said Blackman W. Lee and Mary Hooks, having entered into an agreement of marriage, which marriage is soon to be legally solemnized, and the said Mary Hooks, being of her own right seized and possessed of a large real and personal estate, is willing and anxious so to execute, that the said Mary *Page 70 
Hooks shall not be deprived of the use, benefit, and profit of the said estate, real and personal, by reason of their intended marriage, and the said Mary Hooks being of lawful age to be her own agent; now, therefore, be it known, that for and in consideration of the premises, and for and in consideration of the sum of one dollar to me the said Blackman W. Lee by the aforesaid Marry Hooks, before the sealing and delivering of these presents, the receipt whereof is hereby acknowledged, I, the said Blackman W. Lee, do hereby sell, assign and deliver, alien and confirm, and have by these presents sold, assigned, aliened, delivered, and confirmed unto Mary Hooks aforesaid, all the right, title, estate, interest, and benefit, which I may by operation of law acquire, derive or receive at law or equity in and to the following real and personal estate, now belonging to the said Mary Hooks, by reason of the said intermarriage between the said Blackman W. Lee and Mary Hooks, viz.: Twenty slaves, named: Owen, about 26 years; Pompey, 50 years; Charles, 30; Elijah, 26; Harry, 26; Baltimore, 14; Cader, 10; Henderson, 7; Isaac, 5; Simon, 5; Alvin, 2; Sawney, about one month; (88) Patience, 40; Amoritt, 25; Rane, 24; Teney, 19; Ginny, 10; Margaret, 8; Munny, 3; Martha, 2; also one tract of land in Sampson County containing 830 acres, lying in the fork of Big Cohara and Ward's Swamp, adjoining A. Fleming and Joshua Craddoe; also, two tracts of land in the County of Johnston, being the place where the said Mary now lives, containing eight hundred and seven acres, bounded as per deed from Susannah Blackman to said Mary, dated 21 February, 1829; also one other tract of land, joining the above, containing thirty acres as per deed from John Eason to said Mary Hooks, bearing date 10 December, 1832; also one close carriage and two horses — to have and to hold all and singular the aforesaid lands, negroes, carriage, and horses to the only use and benefit of the said Mary Hooks, her executors and assigns forever; and the said Blackman W. Lee doth solemnly covenant, promise, and agree to and with the said Mary Hooks, that he will, upon the solemnization of the said marriage, or at any time thereafter, when requested by the said Mary, make, execute and deliver all and every necessary title, deed, or conveyance, advised and directed by counsel learned in law, more completely and effectually to secure the intention of this indenture, which is entirely to divest himself of right, title, and estate in and to the above mentioned lands, negroes, carriage and horses; so that he nor his creditors shall have any right to sell or contract the same or any part of said lands, negroes, or their increase, carriage and horses. It is further agreed and understood by and between the contracting parties aforesaid, that the lands, negroes and chattels may remain in the use and occupancy of the said Blackman W. Lee, he paying therefor by way of hire or rent the sum of one dollar on the first day *Page 71 
of January in each and every year, if demanded. It is further agreed by and between the parties to this indenture, that, if it shall be desirable to sell or exchange the whole or any part of the above mentioned real or personal property, the said Mary may transfer and lawfully (89) convey the whole or any part of said real or personal property to any person whatsoever, receiving a fair and full consideration for the same; which consideration, whether it be money or property, she shall hold, possess, and keep in the same manner as the property hereby conveyed is to be held and kept; and this indenture to be as binding and legal as if a third person had been appointed as agent or trustee, the said Mary acting as her own agent and trustee.
In witness whereof the parties have hereunto set their hands and seals, the day and year first above written.
 BLACKMAN.W. LEE, [Seal.] MARY HOOKS. [Seal.]
 Signed and sealed in presence of JOHN EASON, YOUNG ELDRIDGE.
(92)
The case turns entirely upon the construction of the deed of settlement, as it is called.
We concur with the defendant's counsel in the position, which was mainly debated upon the argument of the cause, that the words, "To have and to hold all and singular the land, negroes, etc., to the only use and benefit of the said Mary Hooks, her executors and assigns forever," cannot be considered as amounting to a gift to her next of kin. For, "executors and assigns," taken as words of purchase, cannot mean "next of kin." No case has ever gone so far, and the authorities cited for the defendant fully prove that these words, taken as words of purchase, designate the personal representatives. I Phillips Ex'rs, 1. But, in truth, the words, as used in this clause, are only intended to limit to Mary Hooks an absolute estate, and they are used in reference to her in the same sense that they would have been used in reference to a trustee, had there been one — that is, to convey the idea, that the estate was to be absolute. If there was nothing more in the deed, we should hold clearly, that Mrs. Hooks taking an absolute estate, and dying without making a disposition thereof, the personal estate would pass according to law to her husband as administrator, or to such person as might administer for the use of the husband.
But from the whole instrument the intention is clear, that the *Page 72 
defendant had agreed to accept the use and profits of the land, negroes, etc., during the coverture at a nominal rent of one dollar, if demanded, and to divest himself, to renounce, and give up all further right, which he would otherwise have been entitled to, either in law or equity (93) as husband. The language used to express this intention is as definite and explicit as language can be, and the only want of perspicuity is occasioned by using too many words, in the earnest desire, that the intention should not be misunderstood.
"I, the said Lee, do hereby sell, assign, deliver, alien, and confirm, and have by these presents sold, assigned, aliened, delivered and confirmed to the said Mary Hooks all the right, title, estate, interest and benefit, which I may by operation of law acquire, derive, or receive, either in law or equity in and to the following real and personal estate, belonging to the said Mary Hooks, by reason of said intermarriage."
Our attention was called to the fact, that in the clause covenanting for further assurance, the intention is not expressed quite so forcibly. The intention is, "entirely to divest himself of right, title, and estate in and to the land and negroes, etc.; so that, he nor his creditors shall have any right to sell or contract the same."
If these words were inconsistent with the intention previously expressed, in what may be called the "enacting clause," it would be difficult to hold, that, by any sound rule of construction, they could have the effect of qualifying or varying the stipulations of the parties; for, the object of the covenant is not to vary the stipulations, but to provide that they should be carried fully into effect. The two clauses, however, are not inconsistent, and may well be read together. The intention is, "entirely to divest himself of all right or title; so that he shall have no right to sell;" and so that he shall have no interest, estate or benefit, either in law or equity, by reason of the intermarriage, as is hereinbefore provided and agreed on, except that he is to have the use and profits of the property during coverture at a nominal rent. The demurrer was properly overruled; and the defendant must pay the costs.
PER CURIAM. Affirmed.
Cited: S. c., 43 N.C. 157; Perkins v. Brinkley, 133 N.C. 88. *Page 73 
(94)